UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREANDIS MARQUA JAMISON,

                  Petitioner,

v.                                         Case No. 17-cv-10035

THOMAS MACKIE,                  HONORABLE MARIANNE O. BATTANI

                  Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
## AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Treandis Marqua Jamison seeks the writ of habeas corpus pursuant to

28 U.S.C. § 2254. He challenges his Oakland County (Michigan) convictions for six

counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, six counts

of possessing a firearm during the commission of a felony ("felony firearm"), Mich. Comp.

Laws § 750. 227b, one count of conspiracy to commit first-degree murder, Mich. Comp.

Laws § 750.157a and Mich. Comp. Laws § 750.316, and one count of carrying a

concealed weapon, Mich. Comp. Laws § 750.227.

The grounds for relief set forth in the habeas petition are: (1) the evidence at trial

was insufficient to support Petitioner's assault and conspiracy convictions; (2) the trial

court arraigned Petitioner without first acquiring subject-matter jurisdiction; (3) the trial

court failed to read complete instructions to the jury before the taking of evidence; (4) the

trial court failed to control the proceedings and ensure that the jury was properly

instructed; (5) the prosecution failed to protect Petitioner's constitutional rights when it

allowed his trial to proceed without ensuring that the trial court had subject matter

jurisdiction and that the jury was properly instructed; (6) Petitioner was denied counsel at critical stages; and (7) appellate counsel abandoned Petitioner on appeal. See Pet., ECF No. 1, PageID. 5. Petitioner also alleges that he is entitled to a new trial or an evidentiary hearing on newly discovered evidence that someone else is claiming responsibility for the shooting. See Reply Brief, ECF No. 8, PageID. 1288, 1301.

The State argues in an answer to the petition that the state appellate court reasonably decided Petitioner's first claim (insufficient evidence), that claims two through six are procedurally defaulted, not cognizable on habeas review, or meritless, and that the eighth claim regarding new evidence lacks merit. In reply, Petitioner urges the Court to disregard the State's arguments as groundless and to grant his petition for the writ of habeas corpus. The Court, however, agrees with the State that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I. Background

The charges against Petitioner arose from an incident at a roller skating rink (the "Rolladium") in Waterford Township, Michigan on December 23, 2011. Petitioner was tried before a jury in Oakland County Circuit Court with one of his co-defendants, Cheyenne Ingram.[1] The state court summarized the evidence at trial as follows:

> Defendant attended a Christmas party at a roller skating rink with 300 other guests. During the party, a brawl began between two different groups of skaters, one group including defendant. Rink security ejected defendant, his codefendant, and one other individual for participating in the brawl. A second brawl subsequently erupted on the skating rink and the security personnel left the entrance unsupervised. Security footage from several cameras in the roller skating rink showed defendant, his codefendant, and the other individual reenter the roller skating rink during this time. They walked down the hallway concealing objects in their hands, and when they

---

[1] A third co-defendant, Robert German, had not been arrested at the time of Petitioner's and Ingram's trial.

> reached the entrance to the rink itself, where the second brawl was occurring, they revealed firearms and fired through the entryway into the rink where 200 to 225 people were located at the time. Six individuals received grazing wounds to their arms, legs, or back; one individual was shot directly in the chest.

People v. Jamison, No. 312460, 2014 WL 1679126, at *1 (Mich. Ct. App. Apr. 24, 2014). Neither Petitioner, nor Ingram, testified or presented any witnesses in their defense.

On August 7, 2012, Petitioner's jury found him guilty, as charged, of six counts of assault with intent to commit murder, six counts of felony-firearm, one count of conspiracy to commit murder, and one count of carrying a concealed weapon. On September 5, 2012, the trial court sentenced Petitioner to prison for 285 to 840 months for the assault and conspiracy convictions, 40 to 60 months in prison for the concealed weapon conviction, and two years in prison for the felony-firearm convictions. Two months later, the trial court entered an amended judgment of sentence that changed Petitioner's sentence for the conspiracy conviction to life imprisonment.

In an appeal of right, Petitioner challenged the sufficiency of the evidence supporting his assault and conspiracy convictions. The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case so that the trial court could amend the judgment of sentence to show that the sentence for the conspiracy conviction was life imprisonment with the potential for parole. See Jamison, 2014 WL 1679126, at *1 and n.1, *4. Petitioner raised the same sufficiency-of-the-evidence claim in the Michigan Supreme Court, which denied leave to appeal on September 29, 2014, because it was not persuaded to review the issue. See People v. Jamison, 853 N.W.2d 375 (Mich. 2014).

Petitioner attempted to file a motion for relief from a void conviction under Michigan Court Rule 2.612(C)(1)(d), but his motion was rejected by the state court and never filed.

Petitioner subsequently filed his first habeas corpus petition in this District and a motion to stay the federal proceeding while he pursued additional state remedies. The Court denied the motion for a stay and dismissed the habeas petition without prejudice. See Jamison v. Berghuis, No. 15-10338 (E.D. Mich. Mar. 25, 2015).

Petitioner then filed a motion for relief from judgment in the state trial court, raising six claims about his arraignment, the jury instructions, the prosecution, and his trial and appellate attorneys. The state trial court rejected Petitioner's arguments on the merits and on procedural grounds. The court determined that Petitioner had failed to demonstrate "good cause" under Michigan Court Rule 6.508(D)(3) for failing to raise his claims on appeal and "actual prejudice." See People v. Jamison, No. 12-241693-FC (Oakland Cty. Cir. Ct. July 2, 2015).

Petitioner appealed the trial court's decision without success. The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his post-conviction motion. See People v. Jamison, No. 329081 (Mich. Ct. App. Dec. 21, 2015). On October 26, 2016, the Michigan Supreme Court likewise denied leave to appeal, stating that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Jamison, 886 N.W.2d 434 (Mich. 2016).

Petitioner subsequently filed a second motion for relief from judgment in the state trial court. He claimed to have newly-discovered evidence that co-defendant Robert German had accepted responsibility for the shooting. The trial court denied Petitioner's motion, see People v. Jamison, No. 12-241693-FC (Oakland Cty. Cir. Ct. Feb. 16, 2017), and the Michigan Court of Appeals denied leave to appeal the trial court's decision. See

People v. Jamison, No. 339223 (Mich. Ct. App. Dec. 21, 2017). On October 30, 2018, the Michigan Supreme Court also denied leave to appeal. See People v. Jamison, 919 N.W.2d 250 (Mich. 2018).

Meanwhile, on January 3, 2017, Petitioner filed his current habeas corpus petition. He has exhausted state-court remedies for his claims, and his case is now ready to be adjudicated.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " Wilson v. Sellers, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam)." Renico v. Lett, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. Thus, "[o]nly an 'objectively unreasonable' mistake, [White v. Woodall, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." Saulsberry v. Lee, 937 F.3d 644, 648 (6th Cir.) (quoting Richter, 562 U.S. at 103), cert. denied, __S. Ct.__, No. 19-419, 2019 WL 5301304 (U.S. Oct. 21, 2019). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. Analysis

#### A. Claim One: Insufficient Evidence

Petitioner alleges that the evidence at his trial was insufficient to prove that he participated in the crimes, either as a principal or as an aider and abettor. According to Petitioner, there was insufficient evidence that he possessed the specific intent to commit premeditated murder and, therefore, his convictions for assault with intent to commit murder and conspiracy to commit murder violate his constitutional right to due process.

The Michigan Court of Appeals adjudicated this claim on the merits on direct review and concluded that the evidence at trial was sufficient to support Petitioner's convictions.

### 1. Clearly Established Federal Law

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. Walker v. Russell, 57 F.3d 472, 475 (6th Cir. 1995)." Apanovitch v. Houk, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," Thomas v. Stephenson, 898 F.3d 693, 698 (6th Cir. 2018), because Jackson claims are "subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. Johnson, 566 U.S. at 651 (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court

decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " Id. (quoting Smith, 565 U.S. at 2); see also Tanner v. Yukins, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), cert. denied, 138 S. Ct. 1283 (2018).

## 2. The Substantive Elements of the Crimes

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16. The Michigan Court of Appeals explained the elements of assault with intent to commit murder and conspiracy to commit first-degree murder as follows:

> The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. People v. Brown, 267 Mich. App. 141, 147–8; 703 NW2d 230 (2005). . . . With respect to the conspiracy charge, under MCL 750.157a, a conspiracy exists when "[a]ny person . . . conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner. . . ." "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." People v. Mass, 464 Mich. 615, 629; 628 NW2d 540 (2001). A conspiracy to commit first-degree murder in Michigan requires proof that the conspirators planned, with an intent to kill the victim and this premeditation and deliberation may be inferred. People v. Hammond, 187 Mich. App 105, 107–108; 466 NW2d 335 (1991).

Jamison, 2014 WL 1679126, at *2.

Regarding the necessary state of mind, the Court of Appeals explained that

> [a] jury may infer an intent to kill if a defendant uses a dangerous weapon in the commission of an offense. People v. Taylor, 422 Mich. 554, 568; 375 NW2d 1 (1985), rev'd on other grounds 422 Mich. 554 (1985). "The intent to kill may be proved by inference from any facts in evidence." People v. Jackson, 292 Mich. App 583, 588; 808 NW2d 541 (2011). "The requisite intent [to kill] may be gleaned from the nature of the defendant's acts

constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances. . . ." Brown, 267 Mich. at 150 n 5. Direct evidence itself is unnecessary, whereby a jury may infer an intent to kill from evidentiary facts at trial. People v. Lawton,196 Mich. App 341, 350; 492 NW2d 810 (1992).

Id. Because Petitioner was charged as a principal and as an aider and abettor, the Court

of Appeals noted that,

[i]n order to be convicted under an aiding and abetting theory, the prosecution must show (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. People v. Moore, 470 Mich. 56, 67–68; 679 NW2d 41 (2004).

Id.

### 3. Application

One witness testified that Petitioner was present during the fight at the Rolladium

on the night of the crimes. See 8/2/12 Trial Tr. at 122-23, ECF No. 7-5, PageID. 452-453.

In addition, photos derived from the video taken of the skating party showed all three co-

defendants sitting together before the fighting. See 8/3/12 Trial Tr. at 129-30, ECF No.

7-6, PageID. 577.

Quintin Hardiman, a security guard at the Rolladium, testified that he evicted four

or five people, including Ingram, after the first fight began. Ingram tried to re-enter the

Rolladium with a revolver; he was mad and breathing heavily because he had just been

"jumped" by someone. 7/31/12 Trial Tr. at 83-86, 95, ECF No. 7-4, PageID. 300-301,

306.

Although Hardiman did not see anyone re-enter the Rolladium after he evicted Ingram and a few other individuals, a photo prepared from the video taken during the incident depicted Petitioner, Ingram, and a man in white clothing re-enter the building shortly before the shooting. Id. at 90, 107-08, PageID. 303, 312; 8/3/12 Trial Tr. at 106-08, 123-25, ECF No. 7-6, PageID. 565-566, 574-75. Two other photographs prepared from the video showed Petitioner pointing a handgun and appearing to shoot from the hip. See 8/3/12 Trial Tr. at 74, ECF No. 7-6, PageID. 549. Petitioner and German appeared to be shooting while Ingram appeared to be running toward the exit. Id. at 111-14, PageID. 568-569.

Petitioner's face was not visible in many of the photographs, and they did not show Petitioner actually firing a gun, but Detective Jack Sutherland was convinced from viewing the entire video that Petitioner was visible in the photographs. Sutherland thought that the shooting came from the area where the defendants were standing. Petitioner, in fact, appeared in one photo to be pointing a gun straight ahead of him into the skating rink. Id. at 121, 137-39, PageID. 581-582, 573. An expert witness in firearms, moreover, testified that at least two guns, and possibly three or four guns, were used in the shooting. See 8/2/12 Trial Tr. at 30-31, 35, ECF No. 7-5, PageID. 406-407, 409.

Despite this incriminating evidence, Petitioner contends that there was no evidence of an intent to kill. But, as the Michigan Court of Appeals pointed out, the jury could have inferred that Petitioner shared Ingram's vengeful state of mind because Petitioner also was attacked during the brawl. In addition, photos derived from the surveillance video showed Petitioner, Ingram, and German return to the party after they were expelled from the Rolladium. Petitioner is depicted trying to hide an object in his

hand after his return and while walking down a hallway toward the skating rink.

Furthermore,

> photograph 39 . . . shows [Petitioner] Ingram, and German shooting from
> the entrance into the skating rink, and photograph 40, . . . shows [Petitioner]
> shooting into the skating rink. Most importantly, photographs 41 and 42
> clearly and unmistakably show [Petitioner] holding a handgun in his right
> hand and shooting into the crowded skating rink as Ingram and German run
> down the hallway.

 Jamison, 2014 WL 1679126, at *3. The Michigan Court of Appeals opined that, "at the

very least, defendant knew about [the] codefendant's intent to kill for accomplice liability

purposes given the photographic evidence of defendant's participation in the shooting."

Id.

Regarding the alleged conspiracy, the Court of Appeals pointed out that,

Petitioner's

> actions directly before the shooting occurred clearly show a mutual
> understanding between defendant, Ingram, and German to shoot at the
> individuals still at the party in revenge for the earlier brawl. Defendant and
> codefendants returned with firearms after being initially ejected, they walked
> down the hallway of the Rolladium, and they all stopped at the entrance of
> the skating floor and began shooting at the same time. All of these facts
> together create a sufficient foundation for a reasonable jury to determine
> that defendant and codefendants specifically intended on shooting at the
> other individuals when they entered the building, thereby creating an
> unlawful agreement.

Id. at *4.

Additional evidence of Petitioner's guilt came from several handwritten letters that

he wrote while he was incarcerated:

> He addressed one letter to his mother writing, "I just got tired of people
> shooting at me . . . If I get life I probably deserve it . . . I let my family down
> in the worst way . . . I was a bad person."

Id.

A rational juror could have inferred from the evidence that Petitioner assaulted the victims by firing a gun at them or that he aided and abetted his co-defendants in assaulting the victims with knowledge that the co-defendants intended to shoot and kill someone. A rational juror also could have inferred from the evidence, including a photo of him pointing a gun toward the skating rink, that Petitioner had the intent to kill. Finally, a rational juror could have inferred from Petitioner's association with his co-defendants before the shooting and testimony that more than one gun was used in the shooting that Petitioner and his co-defendants agreed to assault people on the skating rink with intent to kill them.

To conclude, the evidence taken in the light most favorable to the prosecution was sufficient to support Petitioner's assault and conspiracy convictions. The Michigan Court of Appeals, moreover, reasonably applied <u>Jackson</u> to the facts. Therefore, Petitioner is not entitled to relief on his claim.

## B. Claims Two through Six: Lack of Jurisdiction, Faulty Jury Instructions, Prosecutorial Misconduct, and Ineffective Assistance of Trial Counsel

Habeas claims two through six challenge the trial court's jurisdiction, the trial court's jury instructions, the prosecutor's conduct, and defense counsel's performance. Petitioner raised these claims in his first motion for relief from judgment, which the trial court denied on the merits and under Michigan Court Rule 6.508(D)(3). Because the trial court determined that Petitioner failed to show "cause" for not raising these claims on direct review, the State argues in its answer to the habeas petition that Petitioner procedurally defaulted the claims.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997). A federal court generally will not review the merits of a state prisoner's claims if a state court declined to hear the claims

because the prisoner failed to abide by a state procedural rule. Martinez v. Ryan, 566 U.S. 1, 9 (2012). A procedural default, however, ordinarily is not a jurisdictional matter, Johnson v. Lee, 136 S. Ct. 1802, 1806 (2016) (quoting Trest, 522 U.S. at 89), and a court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner. Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

Claims two through six do not warrant habeas relief for the reasons stated below. Accordingly, the Court excuses the alleged procedural error and "cut[s] to the merits," as a procedural-default analysis would only complicate this case. Thomas v. Meko, 915 F.3d 1071, 1074 (6th Cir.) (citing Storey v. Vasbinder, 657 F.3d 372, 380 (6th Cir. 2011)), cert. denied, 139 S. Ct. 2726 (2019).

### 1. The Trial Court's Jurisdiction

Petitioner alleges that the state trial court deprived him of due process and a fair trial because it arraigned him without first acquiring subject-matter jurisdiction. Specifically, Petitioner alleges that: (a) the assistant prosecutor, as opposed to the prosecutor, initiated the felony complaint and authorized the warrant; (b) the felony complaint is defective because it does not contain a sufficient statement of facts; (c) no magistrate's return exists, and, therefore, jurisdiction did not transfer from the state district court to the state circuit court; (d) the trial court arraigned Petitioner on June 20, 2102, even though the prosecution did not file the requisite felony information until June 21, 2012; and (e) the felony Information merely referred to the criminal statutes and provided a "bare bones" description of the offense.

The state trial court found no merit in Petitioner's jurisdictional arguments because: state law permits an assistant prosecutor to perform certain duties even when the

prosecutor is not absent or under a disability; the criminal Information contained sufficient facts; the bindover to state circuit court was proper; and Petitioner was properly bound over before the prosecutor filed the felony Information. Although Petitioner continues to maintain that the trial court violated procedures mandated by state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). "McGuire thus forbids federal habeas courts from second-guessing a state court's resolution of a state-law question." Thomas, 898 F.3d at 705. In other words, the state court's interpretation of state law binds this Court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Furthermore, whether the state trial court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." Willis v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976). Thus, "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." Strunk v. Martin, 27 F. App'x 473, 475 (6th Cir. 2001). Petitioner is not entitled to relief on his jurisdictional claim.

## 2. The Trial Court's Jury Instructions

Petitioner's third claim alleges that the trial court violated state law and deprived him of due process and a fair trial by failing to read the elements of the crimes to the jury after the jury was sworn and before any testimony was taken. Petitioner contends that this omission permitted the jurors to speculate on the standard they were to apply when evaluating the incoming evidence.

Petitioner's fourth claim is similar. It alleges that the trial court did not control the criminal proceedings by properly instructing the jury before the taking of evidence.

The state trial court rejected both of Petitioner's claims about the jury instructions. It opined that it had instructed the jurors as required by law, and it pointed out that it informed the jurors of the elements of Petitioner's crimes at the conclusion of the case.

Petitioner's claim that the trial court violated state law on jury instructions fails because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). Instead, "a federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 68.

Trial judges, of course, have a duty to give instructions that sufficiently explain the law, Kelly v. South Carolina, 534 U.S. 246, 256 (2002), but not every deficiency in jury instructions rises to the level of a due process violation. Middleton v. McNeil, 541 U.S. 433, 437 (2004). "[T]o warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." Scott v. Mitchell, 209 F.3d 854, 882 (6th Cir. 2000). In making that determination, the Court must bear in mind that the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." McGuire, 502 U.S. at 72-73 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Petitioner is not challenging the accuracy of the trial court's jury instructions. Rather, he is claiming that the trial court failed to inform the jurors of the elements of the crimes before the taking of testimony. During voir dire, however, the trial court read the charges against Petitioner and explained the elements of the crimes. See 7/30/12 Trial

Tr. at 6, 13-15, ECF No. 7-3, PageID. 204, 208-09. Although the jurors who deliberated Petitioner's case may not have been in the jury box at the time, they would have been in the courtroom listening to the proceedings.

The trial court repeated the elements of the charged crimes at the conclusion of the case. See 8/6/12 Trial Tr. at 62-69, ECF No. 7-7, PageID. 629-633. The court also provided the jury with a written copy of the jury instructions. Id. at 72, PageID. 634.

Any procedural irregularities under state law did not deprive Petitioner of a fair trial because the trial court's jury instructions sufficiently explained the standard that the jurors had to apply when deliberating Petitioner's case. Therefore, Petitioner is not entitled to relief on his third and fourth claims regarding the jury instructions.

### 3. The Prosecution

Petitioner's fifth claim alleges that the prosecution deprived him of a fair trial by failing to ensure that the trial court had subject matter jurisdiction and that the jury was properly instructed. No state court adjudicated the merits of this claim, but prosecutorial-misconduct claims are reviewed deferentially in a habeas case. Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004). "To be cognizable, the misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process." Bowling v. Parker, 344 F.3d 487, 512 (6th Cir.2003) (quotation marks and citation omitted).

As pointed out above, the trial court determined that it had jurisdiction in Petitioner's case, and its jury instructions included an explanation of the elements of the crimes. Therefore, the prosecutor did not engage in misconduct by failing to object to the trial court's jurisdiction or the jury instructions.

### 4. Trial Counsel

Petitioner's sixth claim alleges that trial counsel was ineffective for refusing to object to (i) the trial court's lack of subject-matter jurisdiction, (ii) the trial court's failure to give complete jury instructions and control the proceedings, and (iii) the prosecutor's conduct. Petitioner also contends that trial counsel failed to investigate the case, interview essential witnesses, and prepare a defense supported by a trial strategy.

The state trial court applied Strickland v. Washington 466 U.S. 668, 690 (1984), to Petitioner's claim and rejected the claim. The trial court stated that Petitioner had failed to rebut the presumption that counsel's actions constituted sound trial strategy and because there were no errors in the case, trial counsel was not ineffective for failing to raise Petitioner's claims.

To prevail on his ineffective-assistance-of-counsel claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The standards created by Strickland and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Richter</u>, 562 U.S. at 105 (internal and end citations omitted).

Here, the trial court found no merit in Petitioner's jurisdictional claims, and it determined that it appropriately instructed the jury on the law. The prosecutor, moreover, did not engage in misconduct or deprive Petitioner of a fundamentally fair trial. Therefore, an objection to the trial court's jurisdiction, the jury instructions, and the prosecutor's conduct would have been futile. "[T]he failure to make futile objections does not constitute ineffective assistance." <u>Altman v. Winn</u>, 644 F. App'x 637, 644 (6th Cir. 2016).

Petitioner, nevertheless, contends that trial counsel also failed to investigate the case, interview essential witnesses, and prepare a defense supported by a trial strategy. The record, however, indicates that Petitioner's attorney was prepared for trial and that he had a trial strategy. He actively participated in <u>voir</u> <u>dire</u>, gave an opening statement, cross-examined witnesses, made appropriate objections, moved for a directed verdict of acquittal, and gave a closing argument where he maintained that there was a lack of evidence. Defense counsel pointed out that none of the witnesses claimed to see Petitioner with a gun, and no one could determine from the photos or video whether the gun he supposedly possessed was real and functional. Counsel also stated that law enforcement officials were merely assuming Petitioner had fired the gun.

Defense counsel pointed out that Hardiman, the security guard, had said the shooting seemed to be random. Defense counsel concluded from Hardiman's testimony that there was no intent to kill anyone and that the lack of evidence created reasonable doubt.

It is true that defense counsel had "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. But it is obvious from the record that defense counsel was familiar with the facts, and Petitioner has not identified any particular investigation that defense counsel could have pursued. The duty to investigate does not require defense attorneys to

> scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.

Rompilla v. Beard, 545 U.S. 374, 383 (2005).

Petitioner also has not named any witnesses that his attorney should have interviewed. In the absence of any affidavits or other evidence demonstrating that witnesses had specific testimony favorable to the defense, Petitioner cannot show he was prejudiced by the omission of the testimony. Clark v. Waller, 490 F.3d 551, 557 (6th Cir. 2007); Tinsley v. Million, 399 F.3d 796, 810 (6th Cir. 2005).

Petitioner has failed to demonstrate that his trial attorney's performance was deficient performance and that the allegedly deficient performance prejudiced the defense. Therefore, the trial court reasonably applied Strickland, and Petitioner is not entitled to relief on his claim about trial counsel.

### C. Claim Seven: Ineffective Assistance of Appellate Counsel

Petitioner alleges that his appellate attorney abandoned him during his appeal of right by refusing to entertain any of the issues that he raised in his first motion for relief from judgment. Petitioner also alleges that appellate counsel failed to inform him that he had a right to file a pro se supplemental brief.

The trial court rejected this claim during post-conviction proceedings. The court stated that Petitioner had failed to establish any defect in his case and appellate court was not ineffective for failing to raise non-existent issues. The court concluded that appellate counsel's actions were not outside the wide range of professionally competent assistance.

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in Strickland. Smith v. Robbins, 528 U.S. 259, 285 (2000). To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issues. Id. (citing Strickland, 466 U.S. at 687-91, 694). "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).

The five claims that appellate counsel could have raised on appeal (habeas claims two through six), lack merit for the reasons given above. Therefore, appellate counsel did not act unreasonably in failing to discover and raise all of Petitioner's claims on appeal, and there is not a reasonable probability that Petitioner would have prevailed if counsel had raised the claims on appeal. Further, the state trial court reasonably applied Strickland to Petitioner's claim. Petitioner is not entitled to relief on his claim.

### D. Claim Eight:  Newly Discovered Evidence

In his reply to the State's answer to his petition, Petitioner asserts his innocence, and in his eighth and final claim, Petitioner purports to have newly discovered evidence that a key witness has come forward and claimed responsibility for the shooting at the

Rolladium.  The "key witness" is co-defendant Robert German, who states in an affidavit dated August 12, 2015, that:

> ● On December 23, 2011; he shot six people;
>
> ● Petitioner and Ingram were with him at the time, but they did not see him retrieve a gun, and they did not know what he intended to do with the gun or that he was planning to go back to the skating party;
>
> ● neither Petitioner, nor Ingram, had a gun, and if they had known his plans, they would have stopped him from making the biggest mistake of his life;
>
> ● two innocent men are behind bars because of his misconduct; and
>
> ● he hopes that his affidavit is taken into consideration so that he can accept ownership of the crime he committed, and Petitioner and Ingram can have another chance at a righteous life.

See Petitioner's successive motion for relief from judgment, Attachment A, ECF No. 7-16, PageID. 1200-01.

Petitioner asserts that he is entitled to an evidentiary hearing or a new trial in light of German's affidavit.  However, because the trial court adjudicated Petitioner's claim on the merits during post-conviction proceedings, this Court's review is limited to the record that was before the state court, and Petitioner is not entitled to an evidentiary hearing in this Court.  Pinholster, 563 U.S. at 181.

Furthermore, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  Herrera v. Collins, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  Id.

In capital cases, the Court may assume that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id. at 417. But this is not a capital case, and even if it were, "the threshold showing for such an assumed right would necessarily be extraordinarily high." Id. "To be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Even if Petitioner's claim of innocence were cognizable on habeas review, the claim is not credible because it is based on an affidavit. In the new trial context, pleadings "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." Herrera, 506 U.S. at 417. Affidavits that seek to exonerate a petitioner long after a conviction and that blame someone else for the crime must "be treated with a fair degree of skepticism." Id. at 423 (O'Connor, J., concurring).

Postconviction statements by codefendants are particularly suspect because codefendants may try to assume full responsibility for a crime without any adverse consequences. Allen v. Yukins, 366 F.3d 396, 405 (6th Cir. 2004). German's three-year delay in accepting responsibility for the crime further undermines the credibility of his affidavit. See Ashton v. Davis, 508 F. App'x 486, 488 (6th Cir. 2012).

The state trial court, moreover, correctly pointed out that the facts established at Petitioner's trial " 'sharply deviate' from Mr. German's affidavit." As noted above, photos

prepared from a surveillance video at the Rolladium showed Petitioner pointing a gun toward the crowd on the skating rink. Petitioner has not met the extraordinarily high threshold needed to show that he is actually innocent.

## IV. Conclusion

The state courts reasonably adjudicated and rejected Petitioner's claims. Their decisions were not contrary to, or unreasonable applications of, Supreme Court precedent. Their decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court, therefore, denies the petition for writ of habeas corpus.

## V. Denial of a Certificate of Appealability and Leave to Appeal In Forma Pauperis

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability. The Court also denies Petitioner permission to proceed in forma pauperis on appeal if he appeals this decision, because

an appeal from the Court's decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3). Petitioner may apply to the Court of Appeals for a certificate of appealability and leave to proceed in forma pauperis.

      **SO ORDERED.**


Date: February 11, 2020                   s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                   United States District Judge